IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

KENNETH JOHNSON, father and next
friend to MATTHEW and MARCUS
JOHNSON, minors, and PHYLLIS
JOHNSON                                                    PLAINTIFFS

VERSUS                          CIVIL ACTION NO. 5:04cv309-DCB-JCS

WILKINSON COUNTY, STATE OF
MISSISSIPPI; WILKINSON COUNTY BOARD
OF SUPERVISORS: MACK ADAM HANES,
KIRK SMITH, JACK DARDEN, ROBERT
EARL MORGAN, W.G. JOHNSON,
individually and in their official
capacity; WILKINSON COUNTY
SHERIFF DEPARTMENT, WILKINSON COUNTY
SHERIFF: REGINALD JACKSON,
individually and in his official
capacity; WILKINSON COUNTY SHERIFF
OFFICERS: John Does I-V, individually
and in their official capacity; CITY
OF CENTREVILLE, MISSISSIPPI; MAYOR OF
THE CITY OF CENTREVILLE, MISSISSIPPI:
DAVID OWENS; CITY OF CENTREVILLE,
MISSISSIPPI ALDERMEN: JOHN MOORE,
CARL D'AQUILLA, THOMAS LOBRANO, MARY
WEST, MARY SANDERS, individually and
in their official capacity; CITY OF
CENTREVILLE POLICE DEPARTMENT, CITY
OF CENTREVILLE POLICE CHIEF: JIMMY RAY
REESE, individually and in his
official capacity; CITY OF CENTREVILLE
POLICE OFFICERS: John Does I-V,
individually and in their official
capacity; CAMERON RUSS, DEMARIO RUSS,
EDWARD RUSS, JR., EDWARD RUSS, SR.,
ARTHUR RUSS, TERRY RUSS, and CARLA A.
RUSS                                                       DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the Wilkinson County

Defendants' Motion for Summary Judgment [**docket entry no. 100**] and

the City of Centreville Defendants' Motion for Summary Judgment

[**docket entry no. 107**].  Having reviewed the Motions, briefs, applicable statutory and case law and being otherwise fully advised as to the premises, the Court finds as follows:

### FACTS[1]

On November 15, 2003, Matthew and Marcus Johnson were involved in an altercation with several members of the family of Edward Russ, Jr.  Matthew and Marcus Johnson attended school and played basketball together with two members of the Russ household, Cameron and DeMario Russ.  Apparently, some animosity had developed between Matthew and Cameron, and on the day in question, they engaged in fisticuffs in front of the Russ household, which was located within the City of Centreville city limits.  As the fight progressed, Cameron and DeMario's mother, Carla Russ, exited the house and also became engaged in a physical confrontation with the Johnson boys.  Once the fight ended, Matthew and Marcus Johnson were left with various cuts and bruises, but apparently no permanent injuries.  See Depo. of Marcus Johnson, at 9-11 (noting that he had sustained a bruised shoulder which took approximately five days to heal); Depo. of Matthew Johnson, at 25-28 (noting that he had sustained an injury to his eye which took nearly three weeks to fully heal, and a bite injury to his arm which took over one month to heal).

---

[1] For purposes of resolving the defendants' summary judgment motions before this Court, the facts as set forth by the plaintiffs in their responses will generally be utilized.  No conclusion has been reached regarding the veracity of the plaintiffs' rendition of the facts.

After the bellicose activities ended, Matthew and Marcus Johnson left the city limits and returned to their home in Wilkinson County, Mississippi. Carla Russ and her sons went to the Centreville Police Department and swore out affidavits against Marcus and Matthew Johnson regarding the incident. See Affidavits (attached as Ex. "D" to City of Centreville Def. Motion for Summ. Judgment). Based on these affidavits, Municipal Judge David Crawford issued warrants for the arrest of Marcus and Matthew Johnson. Pursuant to the arrest warrants issued from Judge Crawford's chambers, Chief Reese placed a call to the Wilkinson County Sheriff's Department because the Johnson residence was located in the county. See Pl. Memo. Brief in Response to Wilkinson County Def. Motion for Summ. Judgment, at 2.

Thereafter, several members of the Russ family came to the Johnson's residence, allegedly at the request of Centreville's Police Chief, James Reese.[2] Subsequently, someone from the Johnson family called the Wilkinson County Sheriff's Department at approximately 2:20 p.m to report the disturbance. In response to the 911 call and Chief Reese's request, Deputies Patrick Patterson and Christopher James of the Wilkinson County Sheriff's Department went to the Johnson residence. There, the deputies asked that Kenneth Johnson, the father of Matthew and Marcus, bring his sons

---

[2] Chief Reese denies making such a request. See Depo. of James Reese, at 18-19.

to the Centreville Police Department to address the incident that had occurred at the Russ's property.  See Affidavit of Christopher James, ¶V.  Kenneth Johnson complied with the deputies' request, and he drove his sons back into the city in his own vehicle.  Id.  The deputies accompanied the Johnsons and escorted the boys into the City of Centreville's Police Department.  See Depo. of Marcus Johnson, at 26-27.

Shortly thereafter, Chief Reese arrested Matthew and Marcus Johnson pursuant to the issued warrants.  See Depo. of Marcus Johnson, at 27-28; Depo. of James Reese, at 28.  The Johnson boys were taken into custody by the City of Centreville Police Department and eventually pled guilty to charges of simple assault and disturbing the peace.  See Depo. of Matthew Johnson, at 6; Depo. of Marcus Johnson, at 28-29; Guilty Plea of Marcus Johnson (attached as Ex. "I" to City of Centreville Def. Motion for Summ. Judgment).  These convictions have never been challenged.

## PROCEDURAL HISTORY

Kenneth and Phyllis Johnson, as parents and next friends of Matthew and Marcus Johnson, initiated the current suit on November 12, 2004, submitting numerous claims based on the incidents which occurred on November 15, 2003.  Their First Amendment Complaint names a multitude of defendants, including Wilkinson County, the Wilkinson County Board of Supervisors, the Wilkinson County Sheriff's Department, the County Sheriff and five unnamed County

deputies (the "Wilkinson County Defendants"). Also named as defendants are the City of Centreville, the mayor, the Board of Aldermen, the City's Police Department, the police chief and five unnamed City police officers (the "City of Centreville Defendants"). Lastly, the plaintiffs have also included various members of the Russ family in this action (the "Russ Defendants").

The First Amended Complaint submits a litany of both federal and state law claims against the defendants. As to the federal claims, the following counts are alleged: (I) violation of the First and Fourteenth Amendments to the United States Constitution; (II) excessive force in violation of the Fourth, Eighth and Fourteenth Amendments; (III) invasion of privacy in violation of the Fourth, Eighth and Fourteenth Amendments; (IV) violation of liberty interests guaranteed by the Fourth, Fifth, Eighth and Fourteenth Amendments; (V) unreasonable restraint and abuse in violation of 42 C.F.R. §§ 483.10–70; (VI) bad faith in the manner in which the plaintiffs were allowed to select a bonding agency; (VII) selective prosecution; (VIII) harassment in violation of the plaintiffs' constitutional rights; (IX) conspiracy to violate the plaintiffs' constitutional rights; (X) failure to properly train and supervise police officers; (XI) failure to properly train and supervise 911 officers; (XII) failure to properly train and supervise officers responding to 911 calls.

As to the state law claims, the following counts are alleged:

(I) willful and wanton breach of certain duties owed to the plaintiffs; (II) arrest and detention in violation of the plaintiffs' rights under state law; (III) intentional infliction of emotional distress; (IV) assault by the Russ defendants; (V) arrest and detention in violation of Articles 3, 14 and 32 of the Mississippi Constitution; (VI) negligence; (VII) gross negligence.

Needless to say, many of the counts alleged are duplicative.[3] Moreover, several counts are so haphazardly and inartfully pled that the plaintiffs' causes of action in regard thereto are difficult to divine.[4]   The Wilkinson County Defendants have responded to the claims alleged against them and filed the instant Motion for Summary Judgment on October 28, 2005, arguing that, as a matter of law, all such claims against them should fail.  On November 4, 2005, the City of Centreville Defendants also moved this Court for summary judgment as to all claims against them.

---

[3] For instance, it is difficult to discern any meaningful distinction between the plaintiffs' allegations that the defendants failed to train and supervise "their officers" (Count X of the Complaint), "their 911 officers" (Count XI of the Complaint) and "the officers to respond to a 911 calls [sic]" (Count XII of the Complaint).

[4] The Court is particularly concerned with the plaintiffs' allegation that the defendants violated 42 C.F.R. §§ 483.10-70. Those sections deal with the "Requirements for Long Term Care Facilities" under Medicaid and Medicare and have absolutely no application to the facts of this case.

**DISCUSSION**

## I.  Standard for Summary Judgment

A motion for summary judgment is appropriately granted when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party has the initial burden of identifying relevant portions of the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A contested fact is "material" when it has the potential to change the outcome of the case.  Ginsburg 1985 Real Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  An issue is "genuine" if "the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party."  Id.

If the moving party sustains its burden, the burden shifts to the nonmoving party to show with "significant probative evidence" that a genuine issue as to a material fact actually exists.  Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994).  To overcome summary judgment, the nonmoving party must do more than simply rely on the pleadings or merely rest "upon conclusory allegations, improbable inferences, and unsupported speculation."

-7-

Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1449 (5th Cir. 1993).
The non-movant must "designate specific facts showing the existence
of a genuine issue for trial." Anderson, 477 U.S. at 250.  "The
mere existence of a scintilla of evidence is insufficient to defeat
a properly supported motion for summary judgment." Id. at 252.
Moreover, the nonmoving party must make a showing sufficient to
establish the existence of an essential element of its case, an
element on which it will bear the burden of proof at trial.
Celotex, 477 U.S. at 322.

In light of the facts presented by the nonmoving party, along
with any undisputed facts, this Court must decide whether the
moving party is entitled to judgment as a matter of law.  When
deciding a motion for summary judgment, the evidence submitted by
the nonmoving party is presumed valid, and all reasonable
inferences that may be drawn from that evidence must be drawn in
favor of the party opposing summary judgment. Anderson, 477 U.S.
at 255.  The district court, therefore, must not "resolve factual
disputes by weighing conflicting evidence, . . . since it is the
province of the jury to assess the probative value of the
evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th
Cir. 1980).  Summary judgment is improper where the court merely
believes it unlikely that the non-movant will prevail at trial.
National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647,
651 (5th Cir. 1962).  By contrast, summary judgment for the moving

party is only proper when a rational jury, looking at the record as a whole, could not find for the nonmoving party.  <u>Matshushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## II. Plaintiffs' Claims against the Wilkinson County Defendants

<u>A.  Federal Claims</u>

All of the plaintiffs' federal claims against the County actors in this case are brought pursuant to 42 U.S.C. § 1983, the federal statutory vehicle through which claimants may seek redress against any person who, under color of state law, deprives them of a federally guaranteed right.[5]  Claims brought under § 1983 are analyzed differently depending upon whether the defendant is a governmental entity or an individual.

*Municipal/County Liability Under § 1983*

In the watershed case of <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978), the Supreme Court ruled that municipalities[6] could be held liable under § 1983 for violating an individual's federally guaranteed rights.  <u>Id</u>. at 683.  However, the Court held that the governmental entity could only be held liable for its own unconstitutional or illegal policies or customs

---

[5]  The Wilkinson County Defendants have interpreted the complaint as basing all federal law claims against them under § 1983.  <u>See</u> Memo. in Support of Wilkinson County Def. Motion for Summ. Judgment, at 10 n.2.  The plaintiffs do not dispute that contention.

[6]  Similarly, county governmental entities may also be properly named in a § 1983 action.  <u>See</u> <u>McMillan v. Monroe County</u>, 520 U.S. 781, 784 (1997).

and could not be held accountable under a <u>respondeat superior</u> theory of liability for the wrongs of its employees. <u>Id</u>. at 691.

With regard to the claims against Wilkinson County and its related governmental subdivisions, the plaintiffs have failed to identify or offer any evidentiary support to establish an official policy or custom which contributed to their injuries. The only feasible allegation supporting the plaintiffs' § 1983 claims against the County is that the governmental entity failed to properly train or supervise its deputies. <u>See</u> <u>Burge v. St. Tammany Parish</u>, 336 F.3d 363, 370 (5th Cir. 2003) (holding that a failure to train claim under § 1983 requires a showing that: (1) the official failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constitutes deliberate indifference to the plaintiff's constitutional rights).

The plaintiffs argue only that the "county officials were deliberately indifferent to the constitutional rights of the Johnsons and are therefore liable in the [sic] supervisory capacity." <u>See</u> Pl. Memo. in Opposition to Wilkinson County Def. Motion for Summ. Judgment, at 4. The plaintiffs cite <u>Burge</u> and <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989), as support for this contention. Neither case salvages the plaintiffs' § 1983 claims against the Wilkinson County entities inasmuch as neither opinion

alters the aforementioned jurisprudential requirement that the plaintiff in a § 1983 claim against a governmental entity must identify some policy or custom which caused the plaintiff's injury. Bulge stands for the proposition that "[w]here . . . an alleged policy or custom is facially innocuous, establishing the requisite official knowledge requires that a plaintiff establish that an official policy was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result."  336 F.3d at 370 (internal quotations omitted); see also Harris, 489 U.S. at 388 ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983) (internal citations omitted).  The plaintiff has not identified a single policy or custom that caused his alleged injury, much less shown that the County officials were deliberately indifferent to the consequences of those unidentified policies or customs.  Consequently, the plaintiffs' § 1983 claims against Wilkinson County, the Wilkinson County Supervisors in their official capacity, the Wilkinson County Sheriff's Department and the Wilkinson County Sheriff and his deputies in their official capacity must be dismissed.

*Individual Liability Under § 1983*

     Any individual who acts "under color of State law" and causes

the abridgment of the plaintiff's federally guaranteed rights may be the proper subject of a § 1983 claim.  See Hale v. Townley, 45 F.3d 914, (5th Cir. 1995).  However, such claims against the individual must be based upon that persons <u>actual</u> involvement in the events giving rise to the deprivation.  See Doe v. City of Roseville, 296 F.3d 431, 440 (6th Cir. 2002).  Supervisors may <u>not</u> be held liable under 42 U.S.C. § 1983 under a respondeat superior theory.  See <u>Watson v. Interstate Fire & Cas. Co.</u>, 611 F.2d 120, 123 (5th Cir. 1980) ("[V]icarious liability cannot be the basis for recovery . . . under 42 U.S.C. s 1983. Liability may be found only if there is personal involvement of the officer being sued . . . .").

Under the aforementioned jurisprudence, it is clear that all of the plaintiffs' claims against the members of the Wilkinson County Board of Supervisors and Sheriff Reginald Jackson, in their individual capacities, must also fail.  The Wilkinson County Defendants point out that none of those individuals had any personal involvement in the events giving rise to this suit. Again, the plaintiffs offer nothing to refute that contention. Summary judgment, then, shall also be granted in regard to the Wilkinson County Board of Supervisors and Sheriff Reginald Jackson in their individual capacities.

As to the two deputies who visited the Johnson household on the day in question, Deputies Patterson and James, the only

"personal involvement" those officers had was their request that
Mr. Johnson take his sons into the city and their escorting the
Johnson boys into the City of Centreville Police Department.  Such
limited involvement by the deputies did not contribute to the
plaintiffs' alleged injuries.  To the extent that the plaintiffs
are seeking damages against the Wilkinson County deputies, in their
individual capacities, those claims will also be denied.

B.  State Law Claims

The Wilkinson County Defendants also argue that the plaintiffs
cannot maintain any of their state-law based causes of action
against them.  See Memo. in Support of Wilkinson County Def. Motion
for Summ. Judgment, at 10.  Primarily, this argument is based upon
the fact that Wilkinson County did not actually arrest or prosecute
the Johnson boys.  The plaintiffs offer nothing in response to the
defendants' argument; therefore, summary judgment will be granted
for the Wilkinson County defendants as to all state law claims
against them.

Having dismissed all federal and state law claims against all
of the Wilkinson County Defendants, said defendants will be
dismissed with prejudice.

**III. Plaintiffs' Claims against the City of Centreville Defendants**

As with the claims alleged against the Wilkinson County
Defendants, the majority of the plaintiffs' federal claims against
the City of Centreville Defendants rely upon § 1983.

-13-

*Unconstitutional Arrest and Detainment*

The bulk of the plaintiffs' claims against the defendants rely upon allegations of wrongful arrest and detainment.  In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the United States Supreme Court stated:

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a write of habeas corpus . . . .

<u>Heck</u>, 512 U.S. 486–87.  <u>See also</u> <u>Hudson v. Hughes</u>, 98 F.3d 868, 872 (5th Cir. 1996) (holding that a § 1983 claim challenging the constitutionality of a conviction or imprisonment does not accrue until the conviction or sentence has been reversed or otherwise terminated in the plaintiff's favor).

Matthew and Marcus Johnson pled guilty to the offenses charged against them, and those convictions have never been challenged. The plaintiffs, however, cite to another passage in <u>Heck</u> in an attempt to demonstrate that they can maintain their § 1983 claim on the basis of wrongful arrest even though their convictions still stand:

> For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced

-14-

> evidence that was introduced in a state
> criminal trial resulting in the § 1983
> plaintiff's still-outstanding conviction.
> Because of doctrines like independent source
> and inevitable discovery, . . . and especially
> harmless error, . . . such a § 1983 action,
> even if successful, would not necessarily
> imply that the plaintiff's conviction was
> unlawful.  In order to recover compensatory
> damages, however, the § 1983 plaintiff must
> prove not only that the search was unlawful,
> but that it caused him actual, compensable
> injury, . . . which, we hold today, does not
> encompass the "injury" of being convicted and
> imprisoned (until his conviction has been
> overturned).

Heck, 512 U.S. at 487.  Under the reasoning as set forth above, a § 1983 claimant is certainly able to maintain a claim such as excessive force or unreasonable search and seizure even if their conviction remains unchallenged, provided that he or she is able to demonstrate that some injury beyond the arrest or conviction was incurred.

In the present case, the plaintiffs claim that the City of Centreville Police Department failed to adequately investigate the altercation before arresting the Johnson boys must fail.  Because the Johnson boys' conviction still stands, the plaintiffs must offer evidence of an injury beyond Matthew and Marcus Johnson's arrest and conviction to maintain their action against the City for wrongful arrest.  They have not done so.

The plaintiffs, however, have also alleged that the City of Centreville policemen used excessive force in their arrest and denied them necessary medical treatment while incarcerated.  Such

injury, if proven, would be distinct from the Johnson boys arrest and may serve as the basis for their § 1983 claims.   Those claims will be analyzed under the following section.

*Excessive Force and Lack of Medical Attention*

A plaintiff must prove three elements to maintain an excessive force claim pursuant to a § 1983 action, that he: "(1) suffered some injury which (2) resulted from force that was clearly excessive to the need for force; (3) the excessiveness of which was objectively unreasonable."   Heitschmidt v. City of Houston, 161 F.3d 834, 839 (5th Cir. 1998).   The Fifth Circuit requires that a plaintiff has "suffered at least some form of injury" which is not *de minimis* to maintain an excessive force claim.   Jackson v. Culbertson, 984 F.2d 699, 700 (5th Cir. 1993); Williams v. Bramer, 180 F.3d 699.

The City of Centreville Defendants submit that the plaintiffs have failed to demonstrate the requisite injury to avoid summary judgment on their excessive force claims.   In response, the plaintiffs state:

> The Johnson family were arrested without probable cause.  Matthew and Marcus, after being beaten by the Russ family were arrested, handcuffed, and place [sic] in jail without the officers providing medical treatment for their injuries and without the officers conducting an investigation.  The Russ family was never charged by the sheriff's department or police department for their actions.

Pl. Memo. in Support of Response to City of Centreville Def. Motion

for Summ. Judgment, at 5 (emphasis added).  Whether or not the City of Centreville Police Department failed to investigate and arrest members of the Russ family has no relevance to a claim of excessive force.  Any injuries suffered at the hands of the Russ family would also not expose the City of Centreville Defendants to any liability.  Therefore, there is no evidence to support a claim of excessive force against the City of Centreville Defendants and said claim will be dismissed.

In addition to their excessive force claims, however, the plaintiffs also contend that they suffered injuries at the hands of the City of Centreville Defendants inasmuch as Matthew and Marcus Johnson were denied timely medical treatment while in jail.  Claims for inadequate medical treatment of pre-trial detainees may be brought either as a claim based under the Fourteenth Amendment[7] or as a tort claim under the Mississippi Tort Claims Act.[8]

It is unclear which theory or theories the plaintiffs assert. The plaintiffs will be given an opportunity to clear up this confusion and to supply adequate argument and proof to support their claims.  Failure to do so will result in summary judgment on this issue in favor of the City of Centreville Defendants.

*Selective Prosecution or Enforcement*

---

[7] See, e.g., Wagner v. Bay City, 227 F.3d 316 (5th Cir. 2000).

[8] See, e.g., Harvison v. Greene County Sheriff's Dept., 899 So. 2d 922 (Miss. Ct. App. 2005).

-17-

The plaintiffs claim that the Johnsons were selectively prosecuted because members of the Russ family that engaged in the same offenses as did Matthew and Marcus Johnson, were not "questioned, arrested, or charged by the local officials."  Pl. Memo. in Support of Response to City of Centreville Def. Motion for Summ. Judgment, at 6.  As the City of Centreville Defendants point out, Matthew and Marcus Johnson were not "prosecuted" by the City or its subdivisions inasmuch as the Wilkinson County District Attorney's Office actually prosecuted the case.  The Johnsons' claim, however, may be construed as one of "selective enforcement" rather than prosecution.  See Bryan v. City of Madison, 213 F.3d 267, 277 (5th Cir. 2000) (noting that where a governmental official uses his or her power selectively against a single party a selective enforcement claim may lie).

"[T]o successfully bring a selective prosecution or enforcement claim, a plaintiff must prove that the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right."  Bryan, 213 F.3d at 277.  The plaintiffs claim that they have made out a claim of selective enforcement because their First Amendment right to speech was denied when they "were not allowed to sign and file an affidavit against the Russ family members and were refused equal protection and the right to be safe on their property."  Pl. Memo. in Support of Response to

–18–

City of Centreville Def. Motion for Summ. Judgment, at 6.

Such an allegation, however, fails to state a cognizable claim for selective enforcement.  Bryan makes clear that the plaintiff must demonstrate that the exercise of the constitutional right (or other impermissible considerations such as membership in a protected class) motivated the governmental actor to single the plaintiff out for retribution.  The plaintiffs do not set forth any impermissible consideration which factored into the City of Centreville Police Department's decision to arrest Matthew and Marcus Johnson.  Instead, they claim that, after the boys were arrested, the City refused to allow the Johnsons to file an affidavit against the Russ family.  Thus, without some causal connection between an impermissible consideration and the selective enforcement, the plaintiffs' claims on this issue must fail.

*Bad Faith in Selecting a Bonding Agency*

The plaintiffs claim that they were impermissibly denied the ability to select a bonding agent of their choice by the City of Centreville in violation of the First and Fifth Amendments.  See Depo. of Kenneth Johnson, at 47.  In response, the City of Centreville Defendants do not refute that they did refuse to accept the plaintiffs' preferred bonding agency; however, they maintain that the City has no control over which bonding agents may be used. Instead, the "municipal court has a list of acceptable agents and according to the court's directive, the City may only accept

bonding payments from the agents listed."[9]   Memo. in Support of
City of Centreville Def. Motion for Summ. Judgment, at 9.  Inasmuch
as the plaintiffs have not countered that contention or offered any
law under which the City could be held liable under a theory of bad
faith selection of bonding agents, summary judgment is granted to
the defendants on this claim.

*First Amendment Claims*

In the first count of their complaint, the plaintiffs allege
that the "arrest and detention of plaintiffs by defendants and its
employees violated those rights guaranteed to Plaintiff[s] by the
First Amendment and [the F]ourteenth Amendment to the United States
Constitution, inasmuch as Plaintiffs were ostensibly arrested for
exercising their right to free speech."  Compl., at 8.  The City of
Centreville Defendants claim that they are entitled to summary
judgment as to that count because the plaintiffs "have failed to
point to any speech in which [they] were engaged that gives rise to
a First Amendment claim."  Memo. in Support of City of Centreville
Def. Motion for Summ. Judgment, at 10.  The plaintiffs do not offer
any argument in direct response to this contention.

Upon review of the pleadings, this Court has identified only
one potential "speech" that was allegedly restricted by the City of

_____

[9] Pursuant to Miss. Code Ann. § 89-39-23, "[n]o sheriff or
other official shall accept bond from a professional bail agent
unless the bail agent is licensed . . . and unless the bail agent
shall exhibit to the court a valid certificate or license issued by
the [Department of Insurance]."

Centreville Defendants: that the Johnsons were not allowed to file an affidavit and a criminal complaint against the Russ family for their participation in the altercation giving rise to Matthew and Marcus' arrest. <u>See</u> Memo. in Support of Pl. Response to City of Centreville Def. Motion for Summ. Judgment, at 6. In essence, instead of framing their First Amendment claims as one asserting a violation of their right to free speech, the plaintiffs' claims could have been more accurately portrayed as one based upon their right to "petition the Government for a redress of grievances." U.S. Const. Amend. I.

However, such a claim was not alleged in the plaintiffs' complaint. The only First Amendment claim was that Matthew and Marcus Johnson were "ostensibly arrested for exercising their right to free speech." There is no evidentiary basis to support this allegation. The alleged refusal by the defendants to allow the Johnsons to file a criminal complaint occurred <u>after</u> the arrest and, therefore, could not have been the cause of that arrest. The plaintiffs have also not moved to amend their complaint to adequately state a claim based upon a violation of their right to petition the government. Therefore, inasmuch as the plaintiffs' First Amendment claim, as alleged in the complaint, has no factual support in the record, that claim will be dismissed.

*Fifth Amendment*

The City of Centreville Defendants have interpreted the

plaintiffs' allegations against them to include one asserting a deprivation of Fifth Amendment rights. <u>See</u> Memo. in Support of City of Centreville Def. Motion for Summ. Judgment, at 10. As "the Fifth Amendment restricts the powers of the federal government and does not apply to state actions[,]" any such claims based upon that Amendment against the City of Centreville Defendants will be dismissed. <u>Pruett v. Dumas</u>, 914 F. Supp. 133, 136 (N.D. Miss. 1996).

*Eighth Amendment*

The plaintiffs have also alleged that the City of Centreville Defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment. The Eighth Amendment applies "only to convicted prisoners and not to pretrial detainees." <u>Scott v. Moore</u>, 85 F.3d 230, 234-35 (5th Cir. 1996). <u>See also</u> <u>Palermo v. Rorex</u>, 806 F.2d 1266, 1271 (5th Cir. 1987) ("The cruel and unusual punishment clause of the Eighth Amendment applies only in criminal actions following a conviction."). Summary judgment will be granted to the defendants on these claims.

*Failure to Train and Failure to Supervise Claims*

The plaintiffs claim that the City officers were not properly trained "in the arrest and treatment of prisoners, the preservation of evidence, or conducting investigations." Memo. in Support of Pl. Response to City of Centreville Def. Motion for Summ. Judgment, at 7. Because this issue is potentially intertwined with the

plaintiffs' claims that they received inadequate medical attention while in jail, more briefing will be required on this issue as well before this Court will determine whether summary judgment is appropriate.

*Other Claims*

The City of Centreville Defendants assert and offer well-reasoned legal argument that they are entitled to summary judgment as to the remainder of the plaintiffs' federal and state law claims. <u>See</u> Memo. in Support of City of Centreville Def. Motion for Summ. Judgment, at 14-20.  The plaintiffs offer nothing to refute the defendants' arguments as to the remaining federal claims.  Thus, summary judgment as to all the remaining federal claims will be granted in favor of the defendants.

With regard to the state law claims, the plaintiffs assert in a conclusory manner that this Court "clearly has supplemental jurisdiction on all state law claims in this matter."  Memo. in Support of Pl. Response to City of Centreville Def. Motion for Summ. Judgment, at 8.  Inasmuch as the defendants did not challenge this Court's supplemental jurisdiction over the state law claims but instead offered argument supported by the case law that all such claims failed on their merits, the plaintiffs' simple reference to jurisdiction is not only puzzling, but also insufficient to  avoid summary judgment against them on those claims.

## CONCLUSION

Based on the reasoning and authority set forth above, the Court finds that both the Wilkinson County Defendants' Motion for Summary Judgment should be **GRANTED.** The City of Centreville Defendants' Motion for Summary Judgment shall be **GRANTED** in part, with the remainder of the Motion to be decided after further briefing by the parties.

IT IS HEREBY ORDERED that the Wilkinson County Defendants' Motion for Summary Judgment [**docket entry no. 100**] is **GRANTED** as to all claims;

IT IS FURTHER ORDERED that Wilkinson County, the Wilkinson County Supervisors (Mack A. Hanes, Kirk Smith, Jack Darden, Robert E. Morgan, W.G. Johnson), the Wilkinson County Sheriff's Department, the Wilkinson County Sheriff (Reginald Jackson) and the Wilkinson County Sheriff Officers are **DISMISSED WITH PREJUDICE;**

IT IS FURTHER ORDERED that the City of Centreville Defendants' Motion for Summary Judgment [**docket entry no. 107**] is **GRANTED** as to all claims except for the plaintiffs' claims regarding inadequate medical treatment given to the Johnson boys while held by the City and their claims regarding inadequate officer training as it pertains to the officers' training in medical care of persons housed in the City jail;

IT IS FURTHER ORDERED that the plaintiffs shall have ten (10) days from entry of this Order to more fully brief their claim that

the Johnson boys received inadequate medical attention while detained by the City of Centreville; such briefing should also address the plaintiffs' theory of liability as to both the City of Centreville as a governmental entity and any individual liability of the involved City employees;

IT IS FURTHER ORDERED that the plaintiffs shall also address in the aforementioned brief any lack of training claims they are asserting against the City of Centreville Defendants as they may relate to the inadequate medical treatment claims;

IT IS FURTHER ORDERED that any rebuttal memorandum shall be due within seven (7) days of the service of plaintiffs' response;

SO ORDERED, this the 22nd day of February, 2006.


                                    S/DAVID BRAMLETTE
                                    UNITED STATES DISTRICT JUDGE